IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MONICA L. WALLACE, and
ROBERT E. WALLACE,

                          **Plaintiffs,**

       v.                                              1:15-cv-1418-WSD

WELLS FARGO BANK, N.A., and
ALDRIDGE CONNORS, LLP,

                          **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Monica L. Wallace's and Robert

E. Wallace's (together, "Plaintiffs") Objections [16] to Magistrate Judge Walter E.

Johnson's Final Report and Recommendation ("R&R") [13], which recommends

granting Defendants Wells Fargo Bank, N.A.'s ("Wells Fargo") and Aldridge

Connors, LLP's ("Aldridge Connors") (together, "Defendants") Motions to

Dismiss [4, 7].  Also before the Court is Plaintiffs' Motion for an Extension Time

[15] to file their Objections to the R&R.[1]

## I.    BACKGROUND

On March 29, 2005, Plaintiffs obtained a loan in the amount of $191,888.00

---

[1]       In view of Plaintiffs' *pro se* status, Plaintiffs' Motion for Extension of Time
to file objections is granted *nunc pro tunc*.

from Bank of North Georgia ("North Georgia" or "Lender") and executed a

promissory note ("Note") in favor of North Georgia.  (Compl. ¶¶ 9-10 & Ex. B).

The Note provides, in relevant part:

> **6.     BORROWER'S FAILURE TO PAY**
>     . . .
>     **(B)  Default**
>     If Borrower defaults by failing to pay in full any monthly
> payments, then Lender may, except as limited by regulations of the
> Secretary [of Housing and Urban Development ("HUD")] in the case
> of payment defaults, require immediate payment in full of the
> principal balance remaining due and all accrued interest. . . .  In many
> circumstances regulations issued by the Secretary will limit Lender's
> rights to require immediate payment in full in the case of payment
> default.  This Note does not authorize acceleration when not permitted
> by HUD regulations.

(Note [1.1] at 8-9).

Repayment of the loan was also secured by a deed ("Security Deed") to real

property located at 2358 Broad Creek Drive, Stone Mountain, Georgia (the

"Property").  (Compl. ¶ 16 & Ex. A).  Plaintiffs executed the Security Deed in

favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for

North Georgia and North Georgia's successors and assigns.  (Id.).  Under the terms

of the Security Deed, Plaintiffs "grant[ed] and convey[ed] to MERS (solely as

nominee for [North Georgia] and [North Georgia's] successors and assigns), and

the successors and assigns of MERS, with power of sale, the [Property]."

(Security Deed at 2).  The Security Deed also provides, in pertinent part:

**9. Grounds for Acceleration of Debt.**

　**(a) Default.** Lender may, except as limited by regulations issued by the Secretary [of HUD] in the case of payment defaults, require immediate payment in full of all sums secured by this Security [Deed] if:

　　(i) Borrower defaults by failing to pay in full any monthly payment required by this Security [Deed] prior to or on the due date of the next monthly payment . . . .

　　. . .

　**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security [Deed] does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(Id. at 3-4).

At some point, Plaintiffs defaulted on their loan payments. (Compl. ¶ 13). Plaintiffs "alleges [sic] that a default was induced by failure to properly credit Plaintiffs' loan account for payments they had made." (Id.).

On September 2, 2010, MERS assigned the Security Deed to Wells Fargo. Plaintiffs' Note was also assigned to Wells Fargo. (Id. & Ex. B [1.1 at 7-8]; see also [7.4]).[2]

---

[2]　Wells Fargo attached to its Motions to Dismiss a copy of the Assignment, which was filed and recorded by the Clerk of Court for the Superior Court of Gwinnett County. This document is a matter of public record and the Court may consider it. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 355 (2007) (on a motion to dismiss, court must consider the complaint and matters of which it may take judicial notice); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-1278 (11th Cir. 1999) (court may take judicial notice of official public

Plaintiffs allege that "[a]fter multiple attempts to contact Defendant Wells Fargo in the hope of securing an affordable loan modification . . . including extensive correspondence and conversation with various Wells Fargo personnel, Plaintiffs' requests for an affordable loan modification or other reasonable workout options were denied."  (Id. ¶ 14).

On September 13, 2014, Plaintiffs sent Wells Fargo a letter ("Letter"), by certified mail, entitled "R.E.S.P.A. Qualified Written Request" ("QWR").  ([1.1 at 10-13]).  In the Letter, Plaintiffs make vague requests for documents and information related, and unrelated, to the servicing of their loan.  Plaintiffs assert that Wells Fargo "did not respond to Plaintiffs' QWR Letter, took no responsive action and undertook no investigation into the issue [sic] raised by Plaintiffs [sic] QWR."  (Compl. ¶ 73).

"[O]n or about February or March 2015, Defendants Wells Fargo and [Aldridge] Connors initiated foreclosure proceedings against the Plaintiffs."  (Id. ¶ 15).

On April 29, 2015, Plaintiffs, proceeding *pro se*, filed their Complaint [1]. Plaintiffs assert claims against Defendants for declaratory relief (Count 1), breach of contract (Count 2), negligence (Count 3), gross negligence (Count 4),

---

records and may base its decision on a motion to dismiss on the information in those records).

negligence *per se* (Count 5), attempted wrongful foreclosure (Count 9), and breach of the duty of good faith and fair dealing (Count 10).  The crux of these claims is that Defendants failed to comply with certain HUD regulations, incorporated by reference into Plaintiffs' Note and Security Deed and which are prerequisites to foreclosure.  Specifically, Plaintiffs assert that Defendants failed to comply with 24 C.F.R. § 203.604(b), because "Wells Fargo and [Aldridge] Connors did not have a face-to-face interview with Plaintiff[s] or make any reasonable effort to arrange such a meeting" before initiating foreclosure proceedings.  (Compl. ¶¶ 32, 35, 40, & 49-50).[3]

   Plaintiffs also assert claims against Defendants for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count 6), and the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") (Count 11).  Last, Plaintiffs claim that Wells Fargo violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (Count 7) and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. (Count 8), by failing to respond to Plaintiffs' Letter.  Plaintiffs seek declaratory relief, compensatory and punitive damages, attorney's fees and litigation costs.

---

[3]     Section 203.604(b) provides that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b).

On May 18 and 21, 2015, Aldridge Connors and Wells Fargo, respectively, moved to dismiss Plaintiffs' Complaint for failure to state a claim.

On August 20, 2015, Magistrate Judge Johnson issued his R&R, which recommends granting Defendants' Motions to Dismiss on all of Plaintiffs' claims.

On September 22, 2015, Plaintiffs filed their Objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must

conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Plaintiffs object to the Magistrate Judge's conclusion that they fail to state a claim for relief in Counts 1-6, and 8, and the Court reviews these claims *de novo*. The Court conducts a plain error review of the unobjected-to portions of the R&R.

2.    Motion to Dismiss for Failure to State a Claim

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also White v. Bank of America, NA, 597 F. App'x 1015, 1018 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts

or legal conclusions masquerading as facts will not prevent dismissal.") (quoting
Oxford Asset Mgmt., Ltd. V. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).

"To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)).  Mere "labels and
conclusions" are insufficient.   Twombly, 550 U.S. at 555.  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than
the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting
Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims
across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550
U.S. at 570).[4]

Complaints filed *pro se* are to be liberally construed and are "held to less
stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus,
551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).

---

[4]    Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short
and plain statement of the claim showing that the pleader is entitled to relief."
Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal
minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that
"[f]actual allegations must be enough to raise a right to relief above the speculative
level . . . ."  Twombly, 550 U.S. at 555.

Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure.  "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief."  Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007).  "[A] district court does not have license to rewrite a deficient pleading." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

> B.    Plaintiffs' Objections

> 1.    Violation of the FDCPA (Count 6)

The FDCPA prohibits debt collectors from, among other things, using "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  To state a claim for relief under Section 1692e, a plaintiff must allege that: (1) the defendant is a "debt collector;" (2) the challenged conduct is related to debt collection activity; and (3) the defendant engaged in an act or omission prohibited by the FDCPA.  Gardner v. TBO Capital LLC, 986 F. Supp. 2d 1324, 1332 (N.D. Ga. 2013) (citing Reese v. Ellis, Painter, Ratteree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012)); Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011)).

Here, Plaintiffs fail to specify any provision of the FDCPA that Defendants allegedly violated.  Plaintiffs assert that Defendants "falsely threatened legal action

and failed to inform Plaintiffs that Plaintiffs had a right to a face-to-face meeting and/or failed to arrange such a meeting."  (Compl. ¶ 56).  Plaintiffs do not describe the "legal action" threatened, when the alleged "threat" was made, or the substance of the threats claimed.[5]

To the extent Plaintiffs argue that Defendants made misleading representations because they did not disclose that they were required under 24 C.F.R. § 203.604(b) to conduct a face-to-face meeting with Plaintiffs before foreclosure, this "misrepresentation" invention is illogical.  It is not a misrepresentation to not disclose a requirement imposed upon a lender, especially where, as here, the absence of notice of the lender's obligation did not impact or prejudice Plaintiffs in any way.

---

[5]     Plaintiffs, for the first time in their Response, state generally that the FDCPA prohibits "harassing, oppressive or abusive conduct (15 U.S.C. § 1692(d)), the 'use of false, deceptive or misleading representations or means in connection with the collection of any debt' (15 U.S.C. § 1692(e)), the use of 'unfair or unconscionable means' to collect a debt (15 U.S.C. § 1692(f)) and failure to validate a debt (15 U.S.C. § 1692(g))—conduct in which Plaintiff[s] contend[] Defendants Wells Fargo and [Aldridge] Connors has [sic] engaged."  ([11] at 10).  This argument is not properly before the Court and the Court will not consider it.  Cf. Huls v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint).  Even it was properly before the Court, Plaintiffs fail to allege any facts to support that Defendants violated these sections of the FDCPA, and Plaintiffs' general assertions are wholly insufficient to state a plausible claim for relief.  See Twombly, 550 U.S. at 555.

Plaintiffs failed to show that Defendants have engaged in an act or omission prohibited by the FDCPA, and this claim is required to be dismissed. See, e.g., 15 U.S.C. §§ 1692e, 1692g; Gardner, 986 F. Supp. 2d at 1332. Plaintiffs' objection to the R&R on this ground is overruled.

### 2.   Violation of RESPA (Count 8)

To state a claim for relief under RESPA, a plaintiff must allege that: "(1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days, and (4) the plaintiff is entitled to actual or statutory damages." Arroyo v. Bank of America, N.A., No. 1:13-cv-1767-RWS, 2013 WL 3785623, at *3 (N.D. Ga. July 18, 2013) (quotation omitted). RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that requests information relating to the servicing of a loan. 12 U.S.C. § 2605(e)(1)(B). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). To be valid, a QWR must:

> (i) include[], or otherwise enable[] the servicer to identify, the name and account of the borrower; and
>
> (ii) include[] a statement of the reasons for the belief of the borrower . . . that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  A loan servicer has a duty to respond to a borrower's QWR or inquiries related to the servicing of a borrower's loan.  12 U.S.C. § 2605(e); Mallaly v. BAC Loan Serv., LLC, No. 3:10-cv-0074, 2010 WL 5140626, at *7 (N.D. Ga. Oct. 6, 2010) (King, M.J.) adopted at 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010) (Hunt, J.) (citing 12 § U.S.C. 2605(e)).  "If the servicer does not comply with RESPA's deadlines, the borrower can recover actual damages from the failure to communicate, but the borrower is limited to actual damages unless there is a 'pattern or practice of noncompliance.'"  Marks v. PHH Mortg. Corp., No. 5:11-cv-167 (CAR), 2011 WL 5439164, at *3 (M.D. Ga. Nov. 9, 2011) (citing 12 U.S.C. §§ 2605(f)).  To show actual damages, a plaintiff must "demonstrate that [d]efendant's breach proximately caused the alleged damages."  Russell v. Nationstar Mortg., LLC, No. 14-61977-CIV, 2015 WL 5029346, at *6 (S.D. Fla. Aug. 26, 2015).

Here, assuming their Letter constitutes a valid QWR under RESPA,[6]

---

[6]     The Magistrate Judge found that Plaintiffs' Letter was not a valid QWR under RESPA because it "contains a long list of unsupported demands for

Plaintiffs fail to allege facts to support that Wells Fargo's failure to respond caused their claimed damages.  Plaintiffs assert that "they have been damaged by not having all monies [sic] properly credited to their mortgage loan account" and that "they would not have been in default if they had received all credits for the money they have paid on their mortgage loan account."  (Compl. ¶¶ 72-73).  That Plaintiffs admit that they defaulted on their loan payments in 2010—and before their loan was assigned to Wells Fargo—undercuts their assertion that Wells Fargo's failure to respond to their September 13, 2014, Letter caused their alleged damages.  (See id. ¶ 13); see also Thepvongsa v. Reg'l Tr. Servs. Corp., 972

---

documents and information regarding issues unrelated to the servicing of the loan," "does not identify the alleged error or the reasons [Plaintiffs] believed their account was in error and was too broad to provide Wells Fargo with the information necessary to investigate their claims."  (R&R at 25).  Although Plaintiffs make vague requests for numerous documents, the Court observes that some of their requests relate to the servicing their loan.  For example, Plaintiffs state that they dispute the accuracy of their mortgage loan balance because they believe that payments were not properly applied to their account, and they request an itemized payoff statement and a statement of the escrow for their account. Because some of Plaintiffs' requests in their QWR are for information related to the servicing of their loan, including their payment history, the Magistrate Judge's finding that Plaintiffs' Letter does not constitute a valid QWR under RESPA, is not adopted.  See 12 U.S.C. § 2605(e)(1)(B); Patton v. Ocwen Loan Serv., LLC, No. 6:11-cv-445-Orl-19DAB, 2011 WL 3236026, at *3 (M.D. Fla. July 28, 2011) (plaintiffs' letter was a "QWR in part" because he stated that he believed that "payments have not been properly credited to the balance due" which "constituted a request that [the loan servicer] provide information regarding the payments applied to [p]laintiff's mortgage loan [it] serviced"); Goldman v. Aurora Loan Serv., LLC, No. 1:09-cv-3337-RWS, 2011 WL 3845498 (N.D. Ga. Aug. 29, 2011) (plaintiff's request to loan servicer for her payment history was valid QWR).

F. Supp. 2d 1221, 1229 (W.D. Wash. Sept. 25, 2013) ("[p]laintiff has not identified actual damages suffered as a result of [servicer's] failure to respond adequately to the QWR" because "[t]he lack of information did not cause plaintiff to send his payments to the wrong entity, for example, or result in the accrual of late fees or penalties that could have been avoided had defendants timely responded [because] *plaintiff was already in default when the QWR was sent*") (emphasis added); Brothers v. Bank of Am., N.A., No. 5:12-cv-3121-EJD, 2012 WL 4471590, at *3 (N.D. Cal. Sept. 26, 2012) (claim that plaintiff was "damaged in the amount of ongoing penalties, fees and interest charged by [d]efendants" not sufficient to state a RESPA claim for failure to respond to QWR because "[t]hese damages do not flow from any lack of response to the QWR; to the contrary, these 'damages' are a result of [p]laintiff's failure to make loan payments"); Russell, 2015 WL 5029346, at *6 ("Conclusory and speculative allegations about the effects of failure to respond to a QWR's 'laundry list' of request for information are insufficient in the absence of showing how the failure to respond to the QWR[] caused any of these things.").

Plaintiffs fail to allege facts to support that Wells Fargo's failure to respond to their Letter caused their claimed damages, and they do not otherwise assert that Wells Fargo engaged in a pattern or practice of violating RESPA such that they

could recover statutory damages.  See 12 U.S.C. §§ 2605(f)(1)(A)-(f)(1)(B);

Marks, 2011 WL 5439164 at *3.  Plaintiffs fail to state a claim for violation of

RESPA, and this claim is required to be dismissed.  See Frazile v. EMC Mortg.

Corp., 382 F. App'x 833, 836 (11th Cir. 2010) (allegation of damages is a

necessary element of any claim under Section 2605).  Plaintiffs' objection on this

ground is overruled.

### 3.   Breach of Contract (Counts 2 and 10)

To assert a claim for breach of contract under Georgia law, a plaintiff must

show (1) a valid contract; (2) material breach of its terms; and (3) damages arising

from that breach.  See Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d

712, 713 (Ga. Ct. App. 1996); see also Bates v. JPMorgan Chase Bank, NA,

768 F.3d 1126, 1130 (11th Cir. 2014).  Here, Plaintiffs allege that Defendants

breached the Note and Security Deed by failing to conduct a face-to-face meeting

with Plaintiffs before initiating foreclosure proceedings, and, as a result,

"Plaintiff[s] [have] suffered mental anguish, emotional pain and suffering and

damage to [their] credit and reputation . . . ."  (Compl. ¶ 38).

In their objections, Plaintiffs reiterate that Defendants' alleged breach in

failing to conduct a face-to-face meeting with Plaintiffs resulted in their claimed

damages.  It is undisputed that Plaintiffs had already defaulted on their loan

obligations when the alleged breach occurred, and Plaintiffs do not allege any facts to show that a face-to-face meeting would have prevented foreclosure.  Plaintiffs allege that they made "multiple attempts to Contact Defendant Wells Fargo in the hope of securing an affordable loan modification" but their "request for an affordable loan modification . . . were [sic] denied."  (Compl. ¶ 14).  That Defendants reported Plaintiffs' default to credit bureaus and advertised the Property for foreclosure sale was the result of Plaintiffs' failure to make their loan payments, not the result of Defendants' alleged breach.  See Bates, 768 F.3d at 1132-33 (Mortgagor "must show that the premature or improper exercise of some power under the deed . . . resulted in damages that would not have occurred but for the breach."); Rourk v. Bank of Am., N.A., 587 F. App'x 597 (11th Cir. 2014) (mortgagor's failure to make loan payments "is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or omissions.'") (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004)).[7]  Plaintiffs fail to state a claim for

---

[7]      The Court agrees with the Magistrate Judge's conclusion that damages for mental anguish and emotional pain and suffering cannot be recovered in a breach of contract claim, and this claim is required to be dismissed for this additional reason.  See Cummings v. Prudential Ins. Co. of Am., 542 F. Supp. 838, 841 (S.D. Ga. 1982) (under Georgia law, damages for mental suffering arising out of breach of contract, absent breach of a duty independent of contract, are not recoverable).

breach of contract, and this claim is required to be dismissed.[8]  Plaintiffs' objection

on this ground is overruled.

    4.    <u>Negligence (Counts 3, 4 and 5)</u>

A plaintiff asserting a cause of action for negligence under Georgia law must

establish (1) the existence of a duty on the part of the defendant, (2) a breach of

that duty, (3) causation, and (4) damages.  <u>Rasnick v. Krishna Hospitality, Inc.</u>,

713 S.E.2d 835, 837 (Ga. 2011) (citing <u>John Crane, Inc. v. Jones</u>, 604 S.E.2d 822,

825 (Ga. 2004)).

Plaintiffs assert that Defendants failed to comply with 24 C.F.R.

§ 203.604(b) and that "[s]uch conduct constitutes negligence per se."  (Compl.

¶ 51).  There is no private right of action for violation of HUD regulations or the

National Housing Act, <u>see</u> <u>Bates</u>, 768 F.3d at 1130 (citing <u>Roberts</u>

<u>v. Cameron-Brown</u>, 556 F.2d 356, 360 (5th Cir. 1977)), and the negligent acts

---

[8]    As noted by the Magistrate Judge, Plaintiffs' allegations in Counts 2 and 10 must be considered together as a single breach of contract claim.  <u>See</u> <u>Stuart Enters. Int'l, Inc. v. Peykan, Inc.</u>, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001) ("The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself."); <u>see also</u> <u>Smith v. Orthalliance, Inc.</u>, 1:01-cv-2778-BBM, 2004 WL 5512959, at *5 (N.D. Ga. Jan. 9, 2004) ("[A]lthough the plaintiffs plead for relief for breach of an 'implied covenant of good faith and fair dealing' in a separate count of the Amended Complaint, such plea for relief may only be considered as part of their count alleging breach of contract.").  Having found that Plaintiffs fail to show that they suffered damages as a result of Defendants' alleged breach of contract, Plaintiffs' claim in Count 10 for breach of the duty of good faith and fair dealing is also dismissed.

alleged by Plaintiffs against Defendants all arise from the duties created by the

Note and Security Deed.  Georgia law is clear that "[a]bsent a legal duty beyond

the contract, no action in tort may lie upon an alleged breach of [a] contractual

duty."  <u>Wallace v. State Farm Fire & Cas. Co.</u>, 539 S.E.2d 509 (512 (Ga. Ct. App.

2000).  Because Plaintiffs fail to show that Defendants breached a duty they owed

to Plaintiffs independent of the Note and Security Deed, Plaintiffs cannot state a

claim for negligence against Defendants.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Fielbon Dev. Co.</u>

<u>v. Colony Bank of Houston Cnty.</u>, 660 S.E.2d 801, 808 (Ga. Ct. App. 2008) ("A

defendant's mere negligent performance of a contractual duty does not create a tort

cause of action; rather, a defendant's breach of a contract may give rise to a tort

cause of action only if the defendant has also breached an independent duty created

by statute or common law.").

To the extent Plaintiffs appear to argue, for the first time in their Response,

that O.C.G.A. § 51-1-6[9] provides a mechanism for them to assert a claim based on

violation of HUD regulations and the National Housing Act, this argument was not

raised in Plaintiffs' Complaint and the Court will not consider it.  <u>See</u> <u>Huls</u>

<u>v. Liabona</u>, 437 F. App'x at 832 n.4.  Even if properly before the Court, Plaintiffs

---

[9]     O.C.G.A. § 51-1-6 provides: "When the law requires a person to perform an
act for the benefit of another or to refrain from doing an act which may injure
another, although no cause of action is given in express terms, the injured party
may recover for the breach of such legal duty if he suffers damage thereby."

cannot assert a claim for violation of HUD regulations and the National Housing Act under O.C.G.A. § 51-1-6 because a cause of action—breach of contract—already exists to remedy the violations alleged, and, because is well-settled that "the National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow," the Court declines to create one.  See Roberts, 556 F.2d at 360; Miller v. Gen. Wholesale Co., Inc., 101 F. Supp. 2d 1374 (N.D. Ga. 2000) ("It seems clear from the language of [O.C.G.A. § 51-1-6] that no cause of action is created where, as here, an express cause of action already exists."); cf. Moses v. Banco Mortg. Co., 778 F.2d 267, 272 n.2 (5th Cir. 1985) (collecting cases holding that National Housing Act and regulations do not provide private cause of action and refusing to create one). Plaintiffs fail to state a claim for negligence and these claims are required to be dismissed.[10]  Plaintiffs' objection on this ground is overruled.

### 5.   Declaratory Judgment (Count 1)

"[T]o pursue properly a declaratory judgment under Georgia law 'a party

---

[10]     Plaintiffs also fail to show that Wells Fargo's alleged failure to conduct a face-to-face meeting with Plaintiffs, or to inform them of the availability of homeownership counseling, resulted in Plaintiffs' damages.  Plaintiffs' negligence claims are required to be dismissed for this additional reason.  See Bradley Ctr., 296 S.E.2d at 695.

must establish that a declaratory judgment is necessary to relieve himself of the

risk of taking some future action that, without direction, would jeopardize his

interests.'" Milani v. One West Bank FSB, 491 F. App'x 977, 979

(11th Cir. 2012) (quoting Porter v. Houghton, 542 S.E.2d 491, 492 (Ga. 2001)).

Plaintiffs seek a declaration that Defendants did not have a face-to-face

interview with Plaintiff before foreclosure, that as a result, Defendants did not

comply with HUD requirements or the Security Deed, and foreclosure is therefore

premature.  (Compl. ¶¶ 32-33).  It appears that Plaintiffs have already defaulted on

their loan obligations, and it is undisputed that Defendants already allegedly

breached the Security Deed and initiated foreclosure proceedings.[11]  No

uncertainty exists about any future action by Plaintiffs which might affect their

interests.  A declaratory judgment is unavailable because "all material rights have

accrued based on past events."  See Milani, 491 F. App'x at 979.  In their

Complaint, Plaintiffs seek, in effect, "an advisory opinion as to whether, based

---

[11]     To the extent Plaintiffs sought to enjoin foreclosure until Defendants comply
with HUD regulations, Plaintiffs assert in their Objections that "Defendants have
foreclosed plaintiffs [sic] home since the filing of this complaint," and Plaintiffs'
request is now moot.  Having found that Plaintiffs' breach of contract claim is
required to be dismissed, the Court agrees with the Magistrate Judge's conclusion
that Plaintiffs' claim in Count 1 is redundant and declaratory relief is not available
for this additional reason.  See Einsberg v. Standard Ins. Co., No. 09-80199-CIV,
2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) ("[A] decision on the merits of
the breach of contract claim would render the defendant's request for declaratory
judgment moot or redundant.").

upon past events, [they] would prevail on the merits if [they] file[d] an action at law or equity to establish" that foreclosure was wrongful.  See Logan Paving Co. v. Peoples Bank & Trust, 395 S.E.2d 287, 288 (Ga. Ct. App. 1990).  Plaintiffs' claim for declaratory relief is required to be dismissed, and Plaintiffs' objection on this ground is overruled.

### C.    Unobjected-to Recommendations

#### 1.    Violation of TILA (Count 7)

Plaintiffs allege that Wells Fargo violated TILA, specifically 15 U.S.C. § 1641(f), by failing to respond to Plaintiffs' request for the "true identity of the owner of Plaintiffs' loan."  (Compl. ¶¶ 62-64).  15 U.S.C. § 1641(f)(2) provides that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2).

The Magistrate Judge found that, because Plaintiffs' September 13, 2014, Letter was intended as a QWR under RESPA, including because it sought information "pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. [sic] X Section 3500.21(e)(1)," the Letter does not constitute a request under Section 1671(f)(2) of

TILA.[12]  The Magistrate Judge found further that Plaintiffs failed to show that they suffered actual damages resulting from Wells Fargo's alleged failure to respond to their Letter.  The Magistrate Judge recommended that this claim be dismissed pursuant to Rule 12(b)(6), and the Court finds no plain error in this recommendation.  See Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) ("[D]etrimental reliance is an element of a TILA claim for actual damages . . . a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages."); see also Che v. Aurora Loan Serv., 847 F. Supp. 2d 1205, 1209 (C.D. Cal. 2012) (dismissing claim for failure to plead actual damages resulting from alleged TILA violation because damages resulted from plaintiff "allow[ing] her loan to go into default").[13] Plaintiffs' claim for violation of TILA is dismissed.

---

[12]    Although Plaintiffs state in their Complaint that they requested information regarding the "owner of Plaintiffs' loan," in their Letter, Plaintiffs request, "pursuant to Section 1641(f)(2) of TILA," "the "[f]ull name, address, and telephone number of the *custodian of* [their] original Promissory Note" and "the *custodian of* [their] original Security Instrument," not information regarding the *owner of the obligation*.  (Compare Letter [1.1¶¶ 5-6] with 15 U.S.C. § 1641(f)(2)) ("Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the *owner of the obligation* or the *master servicer* of the obligation.") (emphasis added).  Plaintiffs' TILA request is doubtfully sufficient to trigger the disclosure obligations under TILA.

[13]    Plaintiffs' assertion that they made "multiple attempts to Contact Defendant Wells Fargo in the hope of securing an affordable loan modification . . . including

6.   <u>Attempted Wrongful Foreclosure (Count 9)</u>

Plaintiffs did not object to the Magistrate Judge's conclusion that Plaintiffs fail to allege facts to support that Defendants published untrue and derogatory statements regarding Plaintiffs' financial condition.  The Magistrate Judge recommended that Plaintiffs' attempted wrongful foreclosure claim be dismissed pursuant to Rule 12(b)(6), and the Court finds no plain error in this recommendation.  <u>See, e.g.</u>, <u>Jenkins v. McCalla Raymer, LLC</u>, 492 F. App'x 968, 972 (11th Cir. 2012) (To state a claim for attempted wrongful foreclosure under Georgia law, "a plaintiff must allege 'a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.'") (quotation omitted).  Plaintiffs' attempted wrongful foreclosure claim is dismissed.[14]

_____

extensive correspondence and conversations with various Wells Fargo personnel," but their "request for an affordable loan modification . . . were [sic] denied," undercuts their claim that they "have been damaged because they were unable to negotiate a settlement with the true owner of their obligation."  (Compl. ¶¶ 14, 66). The facts are that, as of September 2, 2010, Wells Fargo was the holder of their Security Deed and the Note, and was thus the "owner of their obligation."  (<u>Id.</u>).

[14]     The Court notes that Plaintiffs do not allege, and it does not appear, that they are current on their loan obligations.  Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims.  <u>See</u> <u>White v. Bank of America, N.A.</u>, No. 1:12-cv-3834-WSD, 2013 WL 1963786, *3 at n. 11 (N.D. Ga. May 10, 2013), <u>aff'd</u>, 597 F. App'x 1015 (11th Cir. 2014) (per curiam) (collecting cases).  Plaintiffs' attempted wrongful foreclosure claim is dismissed for this additional reason.

### 7.    Georgia RICO (Count 11)

Plaintiffs did not object to the Magistrate Judge's conclusion that Plaintiffs' conclusory, vague allegations that Defendants engaged in theft, deception, and fraud are insufficient to satisfy the special pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure for pleading fraud claims with specificity, and they otherwise fail to allege the required elements of a Georgia RICO claim.[15]  The Magistrate Judge found that Plaintiffs fail to show that Defendants engaged in a pattern of racketeering activity or how the claimed taking of their Property is directly related to Defendants' alleged predicate acts of theft by deception.  The Magistrate Judge recommended that Plaintiffs' Georgia RICO claim be dismissed pursuant to Rules 9(b) and 12(b)(6), and the Court finds no plain error in this recommendation.  See Fed. R. Civ. P. 9(b), 12(b)(6); see also Brown v. Moe's Sw. Grill, LLC, No. 1:07-cv-0741-RWS, 2009 WL 5175280, at *1 (N.D. Ga. Dec. 21,

---

[15]    The Eleventh Circuit has consistently held: "To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  Thomas v. Pentagon Federal Credit Union, 393 Fed. App'x 635, 638 (11th Cir. 2010).  The particularity requirement for fraud in Federal Rule of Civil Procedure 9(b) applies to such fraud-based Georgia RICO claims brought in federal court.  See Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank, AG, 341 F. App'x 487, 493 (11th Cir. 2009) (per curiam).

2009) (citing O.C.G.A. §§ 16-14-4 and 16-14-3(2)) ("A claim under Georgia Civil

RICO requires a demonstration of a 'pattern of racketeering activity' along with a

'direct causal connection between [the] injury and the commission of the predicate

acts."); Joseph v. Fed. Home Loan Mortg. Corp., No. 1:12-cv-1022-RWS, 2012

WL 5429639, at *4-5 (N.D. Ga. Nov. 6, 2012) (allegation that defendants "made

and used false and fraudulent documents, knowingly, in matters concerning real

property," and general assertions that defendants material misrepresentations and

omissions in connection with plaintiff's promissory note, security deed, and

foreclosure, were insufficient to support a claim under Georgia RICO statute).

Plaintiffs' Georgia RICO claim is dismissed.[16]

## III.   CONCLUSION

        For the foregoing reasons,

---

[16]        In their objections, Plaintiffs "request that if this Court should disagree with their stated position . . . then the Court should allow Plaintiffs to amend their complaint." (Obj. 17-18). Plaintiffs do not attach a proposed amendment and they fail to describe its substance. To the extent Plaintiffs seek to amend their Complaint to add allegations "concerning [their] breach of contract claim, FDCPA claim, declaratory relief claim and others," Plaintiffs fail to state a claim for relief supported by any viable legal theory. (Obj. at 17). Based on the allegations in the Complaint, the Court concludes that a more carefully drafted complaint would not state a claim and that it would be futile to grant Plaintiffs leave to amend their Complaint. See Langlois v. Traveler's Ins. Co., 401 F. App'x 425, 427 (11th Cir. 2010) (where a more carefully drafted complaint might state a claim, *pro se* plaintiff should be given opportunity to amend).

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Extension of Time [15] to file objections to the R&R is **GRANTED** *NUNC PRO TUNC*.

**IT IS FURTHER ORDERED** that Plaintiffs' Objections [16] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Magistrate Judge Walter E. Johnson's Final Report and Recommendation [13] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants Wells Fargo Bank, N.A.'s and Aldridge Connors, LLP's Motions to Dismiss [4, 7] are **GRANTED**.

**SO ORDERED** this 27th day of January, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE